## WILLIAM COTTON *v.* JOHN S. BRIEN.

The provision of the constitution of the State of Mississippi, which declares, that " the introduction of slaves into this State as merchandize, or for sale, shall be prohibited from and after the first day of May, 1833," is not merely directory to the Legislature, and inoperative until it shall prohibit their introduction under appropriate penalties. It is prohibitory *per se*, rendering any contract void made in contravention thereof.

Questions which concern our own citizens, although growing out of the constitutional or legislative provisions of another State, will be regarded as new ones, where there is a conflict between the tribunals of the State and of the United States as to their proper construction.

Whatever is done in contravention of a prohibitory law is null and void, though no penalty be denounced by the law for its violation. So of every act contrary to public policy. Their nullity is pronounced by the general principle of the law, and is applied by the courts as cases may arise.

The legislative authority has no power to fix, by a declaratory act, or otherwise, a construction of the constitution of the State, which shall be binding on the judicial department. If the courts occasionally rely upon legislative construction of acts of ordinary legislation, it is because, as to them, the Legislature has a right to repeal, or modify them, or to settle their construction in cases of ambiguity, by a declaratory act.

Where notes were given by defendant and another person, for a purchase made in violation of a prohibitory law rendering the transaction null and void, the substitution of a single note by defendant alone for a balance due after a part payment, will not bar the latter from pleading the illegality of the original contract. *Per Curiam.* The debt does not cease by the release of one of the original debtors, to be the same debt, growing out of the same transaction.

APPEAL from the District Court of Madison, *Curry*, J.

*Shannon*, for the plaintiff. The clause of the constitution of Mississippi prohibiting the introduction of slaves into that State for sale, after the 1 May, 1833, is in violation of the provision of the constitution of the United States, giving to Congress the power " to regulate commerce among the several States." See opinion of Baldwin, J., 5 Peters, 511. *Gibbons* v. *Ogden*, 9 Wheaton, 186, 222. *Brown* v. *State of Maryland*, 12 Ib. 438, 446. Though constitutional, the prohibition to introduce slaves for sale was inoperative, until put in force by a law denouncing a penalty for its violation. See the decision of the Supreme Court of the United States to this effect, 15 Peters, 496. The substitution of

the note now sued on, signed by Brien alone, for those of Brien and Young, and for a less amount, was a novation of the debt, curing any illegality that might have existed. 11 Wheaton, 262. Story's Conflict of Laws, 2d ed., § 249. *De Wolf* v. *Johnson et al.*, 10 Wheaton, 367. Condensed Reports of Sup. Court, Vol. 6, p. 140.

*Stockton* and *Dunlap*, for the appellant.

BULLARD, J. This is an action upon a promissory note, and the defence relied on is, that it was given for the purchase of slaves in the State of Mississippi, which had been introduced into that State as merchandize, and for sale, after the 1st day of May, 1833, in violation of the constitution of that State, which declares, that the introduction of slaves into this State as merchandize, or for sale, shall be prohibited from and after the first day of May, 1833.

The case brings before us a question much agitated of late, to wit ; whether that clause in the amended constitution of Mississippi, be, *per se*, prohibitory, so as to render void any contract made in contravention of it, or whether it is to be regarded as merely directory to the Legislature, and inoperative until the Legislature should have pronounced the prohibition, under appropriate penalties.

In the State of Mississippi, this can no longer be regarded as an open question. Several decisions of the highest court of that State have been brought to our notice, and particularly that of *Brien* v. *Williamson*, decided last March, in the High Court of Errors, since the judgment pronounced by the Supreme Court of the United States, in the case of *Groves et al.* v. *Slaughter*, 15 Peters, 449. The decisions in that State have uniformly been, that the constitution settled the public policy of that State; prohibited the introduction of slaves as merchandize, or for sale, without the necessity of any legislative enactment, and that any contract entered into in violation of the constitution is void.

On the other hand, the Supreme Court of the United States, in the case above referred to, of *Groves et al.* v. *Slaughter*, held, that the prohibition of the constitution did not invalidate the contract, but that an act of the Legislature of the State was required

to carry it into effect, and that no law on the subject of the prohibition in the constitution was passed, until 1837.

Very great respect is due undoubtedly to the decisions of the highest State courts upon questions relating to their constitution, policy, and laws. The authority of the Supreme Court of the United States is also very high, and deserving of the greatest respect. But upon questions which concern our own citizens, although growing out of the constitutional, or legislative provisions of a sister State, when there is a conflict between the Federal and State tribunals, as to the just construction of such provisions, we feel authorized to look upon the question as a new one, and to decide for ourselves.

We have always considered the constitution of the State as the Supreme law, not liable to be altered, or modified by any act of ordinary legislation, and as indicating the will of the sovereign authority of the State, not only upon the form and organization of government, and the distribution of its powers, but upon many questions of domestic policy. When, for example, we find in the constitution of Ohio, a solemn declaration, that slavery, or domestic servitude, shall not be permitted, except by way of punishment for offences, we have regarded it as carrying in itself such paramount authority, that we have held, that the master of a slave who suffered him to live in that State, subjected him to the operation of the law, and that he became thereby free; that the master must be regarded as having tacitly assented to his emancipation. We further regard it as a well settled doctrine, not only of our local law, but of every system of jurisprudence, that whatever is done in contravention of a prohibitory law, is null and void, as well as every act contrary to public policy. The prohibitory law may denounce no punishment, may threaten no penalties, may provide for no forfeitures or disabilities, yet the nullity of all contracts and acts entered into, or done in defiance of the will of the sovereign authority, is pronounced by the general principle of the law, and applied by the courts to cases as they may arise. The constitution of the United States forbids the emitting of bills of credit, by the States; but that provision is, in common, we believe, with all constitutional provisions, without any declared sanction, and yet it never was doubted, that such

bills of credit, and any contract which concerns them, or of which they form the consideration, are void, and of no effect. The courts apply, perhaps, the most effectual of all penalties, that of the nullity of all contracts reprobated by the Supreme law, by refusing to the parties any action to enforce them.

The argument, therefore, which has been drawn from the fact, that the clause in the constitution of Mississippi contains nothing more than a naked prohibition, without sanction, without declared penalties, or forfeitures, by which it is to be rendered effectual, and which shows, that the convention looked to a future Legislature to give it effect as a prohibitory law, has no force with us. It is clear the Legislature had no authority to repeal, modify, or suspend that clause in the constitution ; and there is nothing in the clause itself, nor in the context to induce us to suppose, that the convention intended, that the efficacy of the prohibition should depend upon the future action of the Legislature. The people of Mississippi had already announced as the future policy of the State, that the introduction of slaves into the State, as merchandize, or for sale, should no longer be tolerated, after the first of May. It is true, no punishment was threatened ; but it is also true, that although the Legislature might create penalties, it could not render the introduction of slaves after that period lawful ; and although the courts of the State could not, perhaps, punish directly their introduction as a criminal offence, yet they were bound, in our opinion, to regard the clause in the constitution, as fixing the public policy, and consequently to declare void any contract growing out of the sale of slaves, illegally imported into the State. It is in this way alone, that constitutional provisions, in general, are enforced. The Legislature, at most, could have declared, what punishment should be inflicted on the importer, or the vendor, and what disposition should be made of the imported slaves. But it has no discretion left. The prohibitory clause was not, in our opinion, merely mandatory to the Legislature, but carried within itself the high, the paramount authority of the popular will. It was so binding on the judicial department as the supreme law, that if the legislature had assumed to tolerate that species of commerce after the 1st of May, 1833, the

Cotton v. Brien.

courts would have been bound to declare such enacments uncon-
stitutional and void.

But it has been urged, that the legislative construction of the
constitution has been adverse to this view of the matter. In
support of the argument we are told, that previously to 1st of
May, 1833, a law was passed to alter and amend the article in
question, and vest in the Legislature discretionary power, to re-
gulate, or prohibit the introduction of slaves into the State. Such
a change required the concurrence of two-thirds of both branches
of the Legislature, and the question was referred to the people.
But no modification was sanctioned. Now it is said, that the Le-
gislature could not then have considered the prohibition as in full
force, while these proceedings were in progress to take the sense
of the people upon the proposed amendment of the constitution.
It appears to us, that when the Legislature proposed that it should
be invested with discretionary powers, instead of leaving the con-
stitution as it then stood, it cannot fairly be inferred, that the effi-
cacy of the prohibition depended on the legislative will. Other-
wise they would have had nothing to do, but to remain silent, and
pass no law ; and that, according to the argument, would effectu-
ally have defeated the popular will, as expressed in the constitu-
tion. But the proposition to amend, in our opinion, admits the
obligatory force of that clause in the constitution.

It is further said, that the terms of the act of 1837, confirm
this legislative construction. That act merely repeats, in sub-
stance, the prohibition contained in the constitution, by declaring,
" that hereafter the business of introducing, or importing slaves
into this State, as merchandize, or for sale, be and the same is
hereby prohibited." It is urged, that from the terms of this act,
it was the sense of the Legislature, that from 1833 until its pas-
sage, in 1837, the constitutional inhibition was inoperative.

Admit, for the sake of this argument, that it was so. Since when
does the judicial power look to the Legislature for an interpreta-
tion of the constitution ? If the courts occasionally rely upon
the legislative construction of acts of ordinary legislation, it is be-
cause, as to them, the Legislature has a right to repeal, to amend,
to modify, and by a declaratory law to settle their construction,
in cases of doubt or ambiguity. But the constitution is above

the reach of legislative amendment or change; and although the Legislature may interpret that instrument for itself, in reference to its own action, it is without authority to fix, either by a declaratory law, or tacitly by a series of enactments, a construction of the constitution, which shall be binding on the judicial department. If it were otherwise, then the judicial department would become entirely subordinate to the legislative.

It is shown, that slaves were sold by the plaintiff to the defendant and one Young, for which notes were given by them, and that afterwards Brien took up the notes first given, and subscribed the one now sued on, for the same consideration, a deduction being made of five hundred dollars. It has been argued, that this is a novation of the debt, and that Brien alone cannot avail himself of the illegality of the original contract. We are not of that opinion. If the plaintiff chose to release one of the original debtors, upon the others giving him further security, it does not cease to be the same debt, growing out of the same transaction.

Upon the whole we conclude, that the contract was in violation of the prohibitory clause in the constitution of Mississippi, and consequently void and without effect.

It is, therefore, ordered, that the judgment of the District Court be avoided and reversed, and that ours be for the defendant, with costs in both courts.