HENRY CLAY v. RICE C. BALLARD.

In the interpretation of a contract, it will not be presumed that either party intended to impose an absurd or impossible condition. It will be construed as the parties must be supposed to have understood it at the time of its execution.

A promise of a conditional fee to an attorney at law, for his services in a case, to be paid in the event of a decision in favor of the obligors, though made after he had been retained in the case, is legal, and for a sufficient consideration, and the amount may be recovered, if the condition be fulfilled.

APPEAL from the Commercial Court of New-Orleans, *Watts*, J. This was an action against Ballard, for the sum of $4,000, with interest, from the 10th of March, 1841, on the following obligation, annexed to the petition:

"New-Orleans, January 9, 1841.

"We, R. C. Ballard and Robert Slaughter, promise to pay to Henry Clay, Esq., the sum of five thousand dollars, to wit: Rice C. Ballard paying four thousand dollars, part thereof, and Robert Slaughter paying one thousand dollars, the balance thereof, in addition to his fee already stipulated and agreed upon, in the case of *Moses Groves* v. *Robert Slaughter*, now in the Supreme Court of the United States, provided that the decision of the said court, in the said case, settle fully the question as to the validity of all contracts for the sale of slaves in the State of Mississippi, since the year 1833, or between the year 1833 and the time when the Mississippi Legislature passed the act fixing the penalty for the introduction of slaves, say about May or June, 1837; otherwise, the above obligation to be void.

ROBT. SLAUGHTER.
R. C. BALLARD."

Annexed to the petition was a letter, in these words:

" New Orleans, January 9, 1841.
" Hon. H. Clay.
    " Dear Sir,
        "In the case of *Slaughter* v. *Groves*, now in the Supreme Court of the United States, we are satisfied that we are represented by able counsel, who will use their best efforts in our behalf, for the price already stipulated ; but relying on your ability and best exertions, more particularly, we feel justified in enclosing you the above obligation, believing that thereby we do no injustice to those associated with you in the case.

Your Obt. Servt's.

R. SLAUGHTER.<br>R. C. BALLARD."

" Purely confidential.
R. S.<br>R. C. B."

The answer, after denying the allegations of the petition not expressly admitted, avers that the defendant was neither a party to the suit of *Groves* v. *Slaughter*, nor directly interested therein ; that the obligation sued on was gratuitous, and without consideration, and ought not to be enforced. That the only motive which induced him to offer to the plaintiff the obligation sued on, was to stimulate him to extraordinary exertions, to obtain such a decision in the case of *Groves* v. *Slaughter*, as should settle fully the questions involved in that case, he, respondent, then believing that a judgment of the Supreme Court of the United States, upon all the questions, would fully settle the same, and be legally binding on the courts of the State of Mississippi, and effectually protect him in said courts from the effect of any such plea or defence, as was set up by Groves in the case of *Groves* v. *Slaughter*, when he shall apply to them to enforce any contract, in which he had a direct interest. The respondent further avers, that since the judgment was rendered by the Supreme Court of the United States, he has discovered that it has not fully settled the question mentioned in the obligation sued on, and that said judgment has no binding force upon the tribunals of the State of Mississippi, who may interpret the constitution and laws of that State, as they deem meet ; that they have disre-

garded the judgment of the Supreme Court of the United States, and continue to decide the same question in direct opposition thereto, so that the decision is of no value, legally or morally, to him ; wherefore, he avers that there was error in the only motive of the contract ; that the judgment of the Supreme Court of the United States is not such a judgment as was contemplated by the contract ; that the circumstances attending it, are such as to deprive it of all moral, or legal effect ; that it can in no way benefit him ; and that the instrument sued on was only a proposition to the plaintiff, which was never accepted, and is not, therefore, binding on him.

The material facts proved on the trial of this case, are stated in the opinion delivered by BULLARD, J. The plaintiff is appellant from a judgment against him.

*R. H. Chinn,* for the appellant.

*R. Hunt,* on the same side. The evidence of one witness shows that the defendant promised, after the decision of the suit in the Supreme Court, to pay the amount sued for, when applied to by an agent of the plaintiff. Ballard's letter to the plaintiff is conclusive proof that he was directly interested in the suit of *Groves* v. *Slaughter.* He writes : " In the case of *Groves* v. *Slaughter,* we are satisfied that *we are represented* by able counsel, who will use their best efforts in *our* behalf," &c. The answer of the defendant shows, that he was largely interested in the question. The exertions of the plaintiff were a good and valuable consideration for the obligation. The evidence shows that the obligation of the defendant was received and accepted by the plaintiff, before the argument in the Supreme Court of the United States.

The defendant next contends, that he was owner of several claims similar to Slaughter's, and that his *only motive* to enter into the contract, was to *stimulate* the plaintiff to extraordinary exertions to obtain such a decision in the case, as should settle *fully* the question involved in it, he being then under the *full* impression, that a judgment of the Supreme Court of the United States, would fully settle the same, and be binding on the courts of Mississippi ; that the decision of the Supreme Court did not fully settle the question in the case, has been disregarded by the

courts of Mississippi, and has been of no value to the defendant, who, therefore, pleads error in the motive, and error in law and fact, in avoidance of the contract.

Let us examine this. We have already seen that Ballard represented himself to Mr. Clay, as a party interested in the suit of *Groves* v. *Slaughter*, and stated that *he* was represented in it by able counsel, who would exert themselves in *his* behalf. His averment, therefore, that his *only* motive was to stimulate Mr. Clay to extraordinary exertions to obtain a judgment which, would settle the question involved in that case, and thus to settle similar claims, is disproved by himself. We have seen that Mr. Clay was stimulated to extraordinary exertions, and that the question involved in the case was decided in his favor by the Supreme Court of the United States. The evidence also establishes that Ballard had several other claims, similar to that decided on in the case of *Groves* v. *Slaughter;* that he has compromised all the contracts or cases, which he had of a similar kind: some upon good terms, others on indifferent terms; that he has no longer any interest in the question; and that Mr. Clay's services in the Supreme Court of the United States were highly important and beneficial, in enabling him to make his compromises on as good terms as he obtained.

On the other hand, it has been proved, that the courts of Mississippi—whether under the influence of the doctrines of repudiation or not, is immaterial—have decided against the validity of contracts for the sale of slaves, similar to the contract affirmed and sustained in the case of *Groves* v. *Slaughter*, and have proceeded to give judgments against the sellers of slaves, allowing the purchasers to hold the slaves, and withhold the purchase money.

Can this decision of the Mississippi courts affect Mr. Clay's claim? We contend that it cannot.

The stipulation that the question was to be fully settled contained in Ballard's bond, means that it was to be *so settled, in the the particular case* depending before the Supreme Court of the United States. It means that, or it means nothing. It cannot be tortured to imply that the Supreme Court, in that particular case, was to settle the question, which it involved, in all time to

come, in all tribunals, other than its own, within and without the United States, and in all possible cases that might subsequently arise. It cannot mean that, if courts in Mississippi or elsewhere, will not respect the decision of the Supreme Court, but will make a contrary decision, the covenant is to be nullified.

The decision of the Supreme Court of the United States did, then, fully settle the question involved in the case of *Groves v. Slaughter*, according to the true intent and meaning of Ballard's bond, and was of great value to Ballard, not only in that particular case, but in enabling him to compromise similar cases on good terms. So far, therefore, there was no error on the part of Ballard, either of law, or of fact, in the motive of his contract.

But it is said, that Ballard was under the impression that the opinion of the Supreme court of the United States would be binding on the courts of Mississippi; and that therein consists his error in the motive of the contract.

This is an error which cannot affect the contract. Suppose a man should borrow money at legal interest, and when called upon for the interest he should say, that he thought the interest would be only two per cent, instead of five per cent, would his ignorance of law, be such an error in the motive, as to avoid his contract.

Again : suppose a man should contract with a person to dig a canal between two of his adjoining fields, under the impression that it would drain both ; but that the canal, when completed, would drain only one field, the canal being on an elevated piece of soil and above the level of the other field ? could the contract be avoided ? How then can it be contended that Mr. Clay is not to be paid for his labor and exertions, according to Ballard's contract ? " If I buy a book," says Pothier, " on a supposition that it is a work of excellence, when in fact it is below mediocrity, this error does not destroy my consent, nor consequently vitiate my contract. What I intended to buy and had in view, was the book actually sold to me, and not any other thing. My error respecting the goodness of the book, does not interfere with its being the very book I intended to purchase." Now the stipulation in Ballard's bond is, that the Supreme Court of the United States, will fully settle the question involved in the case of *Groves* v. *Slaughter*, as to the validity of certain contracts for

the sale of slaves : and this, the Supreme Court did settle in that case. Ballard's error as to the influence of this decision on the Mississippi courts, does not interfere with its being the very decision he intended to procure and have made. How could Mr. Clay suppose that Ballard meant any thing else. "No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless, from the nature of the transaction, it must be presumed that he knew it." Civil Code, art. 1820.

It has not even been pretended that Ballard apprised Mr. Clay of the pretended motive, which he now affects to set up as an error to avoid his bond, or that Mr. Clay could have imagined that Ballard believed a state construction of its own statute, could be overturned by the Supreme Court of the United States.

*Grymes*, for the defendant. This action was instituted by the plaintiff to recover of the defendant the sum of $4000, upon the obligation attached to the petition.

The defendant had no direct interest in, and was no party to the suit in which the fee was promised; but he had a very large interest in the principles involved in the cause.

From an examination of the instrument sued on, the court will be satisfied of two things :

*First*, That there was no consideration for the obligation contracted by the defendant :

*Second*, That the obligation was a contingent one, and depended upon the happening of an event.

*Third*, The inquiry is to be made whether the event contemplated has happened, to an extent commensurate with the obligation, and according to the intention and understanding of the obligor, very clearly to be gathered from all the facts and circumstances of the case.

I. It appears from the instrument sued on, that the plaintiff had already been employed in the case of *Groves, Plaintiff in Error*, v. *Slaughter*, together with other counsel. That his fee had been already *stipulated and agreed* upon by the party to that suit; and the report of the case, in 15 Peters, 449, shows that two other of the ablest counsel in the United States had been

employed with him, all before the voluntary obligation was entered into by the defendant.

What valuable consideration could pass from the plaintiff to the defendant?

Was he not already bound to the parties in the suit, to the extent of all his *ability*—of all his professional exertions, to secure a successful result to the suit? Could he give anything more to the defendant for the $4000 voluntarily offered to him, then he was bound in *honor* and in *moral* and *professional integrity to give?* It appears to me that the clear and plain answer to this must be in the affirmative, and that no other can be given without assailing the purity of the administration of justice, dissolving all the ties of morality, honor and integrity which bind the advocate and client together, and destroying all confidence, unless constantly stimulated by heavy pecuniary contributions.

It must be admitted, then, that there was no substantial or valuable consideration, upon which the obligation can rest.

This point is not made so much with a view or hope that it should operate, *per se*, as a bar to the plaintiff's action, as from the necessary influence it must have upon the subsequent parts of the case.

II. It has been stated that the obligation was a contingent one. It is clearly so.

The next enquiry must be, what was that contingency? This is the important question in the case. It is to be ascertained : *first*, from the language of the instrument itself; and, *secondly*, from the situation and circumstances of the obligor, and the nature of his interest in the subject matter of the contract.

The defendant was no party to the suit of *Groves, Plaintiff in Error, v. Slaughter*, then pending in the Supreme Court of the United States.

He had no interest in the money sued for in that case, and could in no way be benefitted by the judgment in it, considering it in its isolated effect as a judgment between Slaughter and Groves. It is evident that the benefit to him was to be the enunciation or the establishment of a *principle*, which should act fully, clearly, and beneficially upon the particular interests of

the defendant. The language of the instrument itself admits of no doubt. It is—"provided that the decision of the said court, in said case, *settle fully* the question, &c."

If the language of the instrument, or the circumstances and situation of the defendant, could leave any doubt about the intention of the parties, it certainly would be placed beyond all doubt by the fact that the whole amount in dispute in the case of Slaughter and Groves was only $7000, as will appear by the copy of the note sued on in that case, incorporated in the opinion of the court, reported in 15 Peters, 449, and which was given in evidence in this case by the plaintiff.

This obligation secures to the plaintiff $5000, in addition to his fee already *stipulated* and agreed upon; and Mr. Webster and Mr. Jones were employed with the plaintiff. It requires no great stretch of the imagination to be perfectly satisfied, that the fees originally stipulated to the plaintiff, to Mr. Webster, and to Mr. Jones, and the $5000 extra to the plaintiff, would more than absorb all the money involved in the case of Slaughter and Groves. I take it then as settled, that the condition, or contingency upon which the obligation sued on was to take effect, was something beyond the mere judgment in the case of Slaughter and Groves.

What that was, is clearly proved by the testimony.

III. This leads us to the enquiry, whether the condition or contingency, upon which alone this obligation was to have effect, has happened.

There were two points raised in the argument of the case of Slaughter and Groves.

One involving the construction of the constitution of the State of Mississippi. The other in relation to the exclusive power of Congress, under the constitution of the United States, to regulate commerce between the States, and the application of that provision of the constitution to the facts of the case in question.

As to the first point, it was well known to all the world, and must have been so to the distinguished gentleman who is plaintiff in this cause, that the long established jurisprudence of the Supreme Court of the United States was, that the decisions of the

state courts construing the laws or constitutions of the States, were conclusive upon the courts of the United States. That such decisions formed a part of the law of the States, as much so as the statutes, and were binding everywhere; and that even where the state courts have changed their opinions and construction of their own laws, the courts of the United States would follow them in those changes. *Shelby* v. *Guy*, 11 Wheaton, 361. *Green* v. *Neale*, 6 Peters, 291.

No decision of the Supreme Court of the United States then, upon the meaning of the constitution of the of Mississippi, could be of any permanent or certain advantage to the great interest of the defendant, unless that decision was in accordance with the jurisprudence of that State, or should afterwards be adopted by it. From all that was known at the time, the jurisprudence of the State was directly against that adopted by the Supreme Court of the United States. Subsequent events have shown a perseverance in that jurisprudence, on the part of the state tribunals. *Green* v. *Robertson*, 5 Howard, 81, 110, 769. No advantage then could possibly result to the defendant from a decision of the Supreme Court, in his favor, on this point of the case, unless upon another contingency, to wit, that it should be adopted by the state courts. Was this contingency in contemplation of the parties? Is it even hinted at in the contract? Can the plaintiff honestly, or conscientiously believe that the defendant intended to pay him an extra compensation, to such an amount, for the judgment in that case alone, leaving a still more uncertain contingency; and can he call such a judgment, a full, *and final settlement* of the question, within the meaning of the contract? I should be willing to leave the decision on this point to the plaintiff himself?

There was but one way in which the condition of this contract, could have been satisfied by a judgment of the Supreme Court of the United States. That was, that the opinion of the court, by its unanimity, the great force of its reasoning, and *its* moral effect, acting upon the tribunals of Mississippi, and producing a conformity in their decisions. Has the condition been satisfied even to this extent?

Mr. Justice Catron did not sit in the cause. Justices Story

and McKinley dissented from the judgment of the court, construing the constitution of Mississippi; and Mr. Justice Barbour died before the case was decided. It was the judgment of only five judges out of nine, a bare majority of the court, and two dissenting absolutely from the judgment as delivered. Its moral force was nothing. It was not adopted, nor concurred in. The Supreme Court of the United States must, on any future occasion, according to its own law, disregard this judgment, and adopt the now well defined and clearly pronounced law of the Mississippi tribunals. Then what advantage can this judgment be to the defendant? What consideration does it offer for the obligation sought to be enforced against him? How has it fully settled the question, in any manner favorably to his interests?

The other point made in the cause in relation to the constitution of the United States, would have been an effectual protection to him, if it had been decided in favor of the defendant in error. But that point was decided, with great unanimity, against him, there being but one dissenting opinion. It may then, with truth, be said, that the plaintiff is in a worse situation since the rendition of the judgment, than he was before.

The sacrifices and losses he has sustained, in consequence of the failure of this decision fully to settle the question in his favor, are shown.

If there should remain any doubt as to the failure in the performance of the condition, or the happening of the event upon which this contract was to become obligatory, it would seem to admit of very little doubt, that it would be void on the score of error. When the consent of the obligor has been produced by error, the contract is void. Civil Code, art. 1813.

There is here manifestly both error of fact, and error of law. It must be clear to all, that the defendant must have been under the impression that a judgment of the Supreme Court of the United States could, and would, in point of fact, protect him from the effect of any such defence as was set up in the case of *Slaughter* v. *Groves*. It is most clearly proved that it could not, and that it has not in fact done so. Civil Code, art. 1815.

Assuming it as a fact certain, or one of which there was reasonable probability, that the judgment of the court would be in

favor of the defendant in error, the defendant must have drawn the inference of law, that it was binding on the courts of Mississippi, or otherwise decisive of his rights, and furnishing a rule of law by which his rights were to be protected. Here was certainly error in law. Civil Code, art. 1816. No one can doubt but that the principal, and, indeed, the only motive that induced the defendant to tender the obligation to the plaintiff, or to enter into the contract, was to obtain such a judgment of the Supreme Court of the United States, as would effectually protect his interest. The plaintiff must have known the motive.

This principal motive has entirely failed. It was founded in error existing at the time the contract was entered into; and the contract is, therefore, void. Civil Code, art. 1817 to 1826. The judgment of the Commercial Court ought, therefore, to be affirmed.

BULLARD, J. The defendant, having an interest in the question involved in the case of *Groves* v. *Slaughter*, then pending in the Supreme Court of the United States, in which the plaintiff, together with other eminent counsel, was engaged for the defendant in error, and before the argument of the case, enclosed to him his conditional obligation for $4,000, as an extra fee. The condition expressed on the face of the obligation, as will be seen by reference to the note, in the statement of facts, was, " that the decision of the said court, in the said case, settle fully the question as to the validity of all contracts for the sale of slaves in the State of Mississippi, since the year 1833, or between the year 1833 and the time when the Mississippi legislature passed the act fixing the penalty for the introduction of slaves, say about May, or June, 1837."

The plaintiff brings the present action to enforce that obligation, on the allegation that the condition has been complied with and accomplished; and he is appellant in this court from a judgment against him in the Commercial Court.

The new constitution of the State of Mississippi, contains the following clause: "The introduction of slaves into this State as merchandise, or for sale, shall be prohibited from and after the first day of May, 1833, provided that the actual settler, or settlers, shall not be prohibited from purchasing slaves in any State in

this Union, and bringing them into this State for their own individual use, until the year 1845." Slaughter having sold slaves in that State, which had been carried there for sale, after May, 1833, and before 1837, sued for the price, and the question which the case presented was, whether the above recited clause in the constitution was, *per se*, prohibitory, independently of any legislative enactment, so as to render void any contract made in contravention of it. It was not until several years after the contract in question, that the legislature acted in relation to the matter, and provided for the infliction of certain penalties. In the mean time, contracts to a vast amount, had been entered into by various dealers in slaves, and, among others, by the present defendant. The defence had been made in different courts, and in relation to contracts involving a large amount, that such contracts were void under the constitution itself, independently of any legislative enactment. The defendant, therefore, was solicitous to have a decision of the Supreme Court of the United States, which should settle that question, to wit, " the validity of all contracts for the sale of slaves in the State of Mississippi, since the year 1833, or between the year 1833 and the time when the Mississippi legislature passed the act fixing the penalty for the introduction of slaves," &c.

On recurring to the decision of the Supreme Court of the United States in that case (15 Peters, 449), it will be perceived that the court did decide, that the contract sued on was a valid and binding contract ; that the plaintiff below had judgment ; that the court expressly decided that the clause in the constitution was only directory to the legislature, and did not, *per se*, import an absolute prohibition ; and, consequently, that sales of slaves brought into the State after May, 1833, as merchandise, and for sale, were valid contracts. As between the parties, and in relation to that particular contract, the judgment was full, final, and conclusive. It has the force of *res judicata ;* and there is every reason to suppose that the same court will, in similar cases, come to the same conclusion.

But it is contended that the decision has not fully settled the question as to all similar contracts ; that, on the contrary, the courts of the State of Mississippi have uniformly disregarded

Clay v. Ballard.

that decision, and maintained a doctrine diametrically opposite thereto; that they regard the constitution as having the paramount authority of the supreme law; as settling the public policy independently of the Legislature; and consequently, all contracts entered into in contravention of it, as void. This is undoubted; and this court has, on one occasion, unanimously, and after solemn argument and mature consideration, come to the same conclusion, in a case in the Western District. 6 Rob. 115. But the question is, how the parties must be supposed to have understood the condition at the time. It cannot be imagined that the defendant intended to impose either an absurd, or an impossible condition; and to make the payment of the additional fee depend upon the fact, that the judgment to be pronounced by the court in the case of *Groves* v. *Slaughter*, to which the defendant Ballard was not a party, should, in all courts, and between all parties, whenever a similar question should arise, carry with it the absolute authority of the thing adjudged. No man in his senses would enter into any such engagement. If Ballard had been asked at the time, what he understood by *fully settling the question as to the validity of all such contracts*, he would probably have answered, so far as the question can be finally settled in that case, by the Supreme Court of the United States affirming the validity of that class of contracts. He cannot be supposed ignorant of the principle, that the question presented in that case is not of the peculiar *ressort* of the federal judiciary; that it is only particular classes of persons, who, in consequence of their citizenship in a different State from their adversary, or of alienage, would be entitled to bring such a question before the United States courts. The defendant evidently expected to profit by the moral operation of that decision, in enabling him to make arranguments with his debtors, rather than by its legal effect in any particular case. Hence we find that he did make many arrangements, more or less advantageous, on the strength of that decision; and that he secured one debt of that kind, which was in suit, and a similar defence made in a Mississippi court. The defence was voluntarily abandoned. But it is contended that the defendant labored under an error both of law and of fact; and that

he must have been under the impression that the judgment of the Supreme Court could, and would protect him, in point of fact, from the effect of any such defence as was set up in that case, while it clearly appears that it has not, and that it could not do so. To this it may be answered, that nothing shows that such was the motive of the defendant; and, even if it was, he has, by entering into compromises without awaiting the final judicial decisions on his own claims, put it out of the power of his adversary to show what might have been, as to him, the legal effect of the judgment in the case of *Groves* v. *Slaughter*. It is not shown that he has lost any claims by the decision of any court disregarding the principle settled in that case.

It is further urged, that the court decided the case upon only one of the grounds relied on in the argument of the able and distinguished counsel, the other point relied upon, to-wit, how far the provision in the constitution of Mississippi conflicted with the grant of power to Congress to regulate commerce between the States, not having been settled; and that, as to the other question relating merely to the construction of the State constitution, it was well known that the Supreme Court of the United States was bound by the decisions of the state tribunals. Such is clearly the general rule they have prescribed to themselves in that class of cases; but in the case of *Groves* v. *Slaughter* they expressly say that the state tribunals had not so positively settled the law, as to bring the case within the rule.

The defendant appears to have been aware of this, for he had suits pending in Mississippi for large amounts, the final termination of which was doubtful.

It is obvious there was a sufficient legal consideration for the promise. In the letter written to the plaintiff, and signed by the defendant and Slaughter, enclosing the note now sued on, they say: " *We* are satisfied that *we* are represented by able counsel, who will use their best efforts in *our* behalf for the price already stipulated, but relying on your ability and best exertions more particularly, we feel justified in enclosing you the above obligation," &c. Here the defendant holds himself out as interested in the case itself as well as Slaughter, and the evidence shows that he was interested in the *question* to a large

amount. Nor do we see any thing immoral, either in the offer, or the acceptance of such extra compensation, in case of success.

The testimony of judge Montgomery shows, that Ballard had, at the time the above mentioned suit was pending in the Supreme Court of the United States, claims to the amount of nearly $200,000, against citizens of the States of Mississippi and Louisiana, which were liable to the same defence made by Groves ; that in one in particular against Gen. Brandon, for about $16,000, the defence had been abandoned after the decision of the Supreme Court. The same is shown in the deposition of Chancellor Quitman, who gives the particulars of a compromise of one claim, amounting to upwards of $100,000.

But it may be asked, what judgment could the court have pronounced in the case of *Groves* v. *Slaughter*, more favorable to the present defendant, either considered as a party, or as having an interest in the question, not explained at the time to the counsel employed.

One witness proves the promise of the defendant to pay the amount of the note, after the decision had been rendered. Although this evidence may be insufficient alone to condemn him, yet it tends to show at least his construction of the contract, and his understanding of the condition upon which depended his obligation to pay. He has made use of the judgment as an argument to his debtors to induce them to waive any such plea, and held it out to them as conclusive upon this question.

We, therefore, conclude, that the condition, as it must have been understood by the parties at the time has been accomplished ; that so far as the court could in that case, it did fully settle the question of the validity of such contracts ; that the binding authority of the judgment, as to the parties, remains unimpaired ; that the plaintiff was far from warranting that it would, in all other cases, and in other courts, be adopted as the unerring guide of decision ; and that, consequently, the plaintiff is entitled to recover.

It is, therefore, adjudged and decreed, that the judgment of the Commercial Court be reversed ; and ours is, that the plaintiff recover of the defendant four thousand dollars, with interest, at five per cent, from judicial demand (January 9th, 1843), with costs in both courts.