ROGERS, Justice.
 

 Plaintiff sued on a promissory note for $8,711, subject to certain enumerated credits, interest, and attorney fees. The defendant is John C. Barry, and the note sued on is signed “J. C. Barry, Trustee,” and is payable on demand to the order of the Bank of Lafayette & Trust Company. Plaintiff alleges that, although the word “Trustee” appears after the signature of J. C. Barry, the said Barry is personally liable on the note. The defense is that plaintiff is not a holder of the note in due course and for a valuable consideration, and that the note itself, issued without consideration and no consideration whatever, was received by defendant for the instrument. An alternative defense is that the note was given for an illegal consideration, which, so far as it is violative of the law, is unenforceable by plaintiff. The court below rejected plaintiff’s demand, and plaintiff has appealed from the judgment.
 

 At the time the note sued on was executed, J. C. Barry was president and in active charge of the affairs of the Bank of Lafayette & Trust Company. For a number of years prior to the execution of the note, it was customary for the bank, from time to time,
 
 *687
 
 to purchase and carry for resale a small amount of its capital stock. The custom arose, following the financial crises of 1920, from the necessity of establishing in the city of Lafayette a central point where dissatisfied or distressed stockholders could dispose of their stock, thereby preventing the peddling of -the stock or its advertisement for sale in the local newspapers to the irreparable injury of the bank. The plan devised and followed as á precautionary and protective measure consisted in the bank purchasing the stock, when unavoidable, paying for it with its own fund's, and issuing certificates in lieu thereof in the name of J. C. Barry, trustee, which certificates were retained by the bank. Barry’s notes, executed as trustee, were taken for the amounts expended, with the distinct understanding that no personal liability would attach to him thereon, and that the notes would be discharged out of the proceeds derived from the resale of the stock and the dividends accruing thereon. The notes were kept in the bank’s portfolio and credited, from time to time, with the amounts realized from the sale of the stock and the accrued dividends; the purchased stock remaining at all times in the possession of the bank as its property.
 

 The note sued on is a renewal of prior notes of the same terms and tenor, and represents the aggregate amount invested hy the bank at the date of the note in purchasing its own stock, the credits entered on the instrument representing returns on the stock which stood on the books of the bank in the name of I. O. Barry, trustee.
 

 In March and May, 1931, the Bank of Lafayette
 
 &
 
 Trust Company sold all its assets to the Commercial Bank of Lafayette & Trust Company. Among those assets was the note which is herein sued on.
 

 Plaintiff contends that it acquired the note for valuable consideration before maturity, and' hence is a holder against whom prior equities will not avail. On this ground, plaintiff objected to the offer of any evidence by defendant in support of his defense. The objection was overruled, and the evidence was admitted. We find no error in the ruling. The unindorsed note was acquired by plaintiff from the Bank of Lafayette & Trust Company, the payee named in the instrument, by contracts of merger or sale. Hence no title resting on endorsement is vested in plaintiff.
 

 As stated in the able written opinion of the trial judge filed in the record: “At common law, under the law merchant, and independently of the Negotiable Instruments Law, a transferee of a note payable to order could not and did not obtain the legal title thereto, except by the endorsement of the payee, and a holder without, such endorsement took it ‘subject to all the equities vested in prior parties.’
 

 “This principle is recognized in all the textbooks and in numerous cases, including the well-known and oft-quoted Louisiana case, Pavey v. Stauffer, 45 La. Ann. 353, 12 So. 512, 19 L. R. A. 716. Therein it was said: ‘A transferee before maturity of a piece of commercial paper, not endorsed at date of transfer, acquires an equitable, but not a legal, title thereto; and the subsequent actual endorsement thereof before maturity does not operate the exclusion of equities between the maker and payee, of which the transferee had notice in the meantime.’
 

 
 *689
 
 “Independently of the common law rule, the Negotiable Instruments Law (Act No. 64 of 1904) section 49, has consecrated the prior doctrine in language clear and unmistakable.
 

 “ ‘Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in' the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the ■time when the endorsement is actually made.’
 

 “Mr. Brannon, in his Negotiable Instruments Law, 4th. Ed., under § 49, at page 340, collects numerous authorities holding that endorsement alone can constitute one a holder in due course of a note payable to order, notwithstanding section 59, for under section 191 he is neither ‘holder’ because not a payee or indorsee, nor ‘bearer,’ because the instrument is not payable to bearer.
 

 “To the same effect is 8 C. J., § 575, p. 389; 3 R. C. L., § 241, p. 1034 and numerous authorities,” cited in support of the test.
 

 Under section 30 of No. 64 of 1904 (the Negotiable Instruments Law), “An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery.”
 

 There having been no negotiation of the note sued on in the sense of the statutory provision, because it was never indorsed by the payee, it is immaterial whether plaintiff acquired the note prior to its maturity.
 

 Section 57 of Act No. 64 of 1904 provides that: “A holder in due course holds the instrument free from any defect of title of prior parties, and free from defences available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.” But 'section 58 of the statute declares that: “In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defences as if it were non-negotiable.”
 

 From'all of which it follows that plaintiff cannot be regarded as a holder in due course, and the instrument sued on is sub ject to the same defenses as if it were nonnegotiable.
 

 Plaintiff also objected to the introduction of any evidence to sustain the allegations of defendant’s answer on the grounds (1) that by the provisions of section 9 of Act No. 179 of 1902, as amended by Act No. 8 of 1922, banking associations are prohibited from purchasing directly or indirectly any of their own stock; and (2) the answer, taken as a whole, discloses that the Bank of Lafayette & Trust Company and the defendant, John C. Barry, were attempting to accomplish by indirect means that which they could not achieve directly, without violating the statute.
 

 Plaintiff’s objection was properly overruled. At the time of the trial of the case, the purchased stock was owned and in the possession of plaintiff as the assignee'of the Bank of Lafayette & Trust Company. If Bar
 
 *691
 
 ry, as the agent of the assignor bank, entered into an immoral and prohibited contract, it was for the purpose of benefiting the bank, which received and retained the fruits of the illegal agreement. No legal obligation rests upon defendant to return money used in the consummation of an unlawful transaction. Courts of justice will not lend their aid to either party to enforce a contract entered into for a purpose reprobated by law. Puckett v. Clarke, 3 Rob. 81. And contracts of an immoral or unlawful cause are not only void themselves, but as a rule cannot be the basis •of any valid auxiliary contract. Cotton v. Brien, 6 Rob. 115.
 

 Plaintiff, in support of its contention, cites the case of St. Paul & Minnesota Trust Co. v. Jenks, 57 Minn. 248, 59 N. W. 299. But, •conceding that the Minnesota and Louisiana statutes are similar in meaning and effect, the cited case was decided on a state of facts •essentially different from the state of facts presented in this case. There, as pointed •out by the trial judge in his opinion, “The •court was dealing with an executed contract, in which the defendant, Jenks, appeared as the original purchaser and holder of the stock and as the debtor of the bank for the amount loaned him to make the purchase. No statute was violated under that state of facts. Had the court granted the defendant, Jenks, the relief sought by him and ordered the return of the stock to the bank on the theory that the bank was the original purchaser of its own stock, it would have thereby substituted for a perfectly valid and legal transaction one denounced by the statute cited.
 

 But in the instant case', if the defendant’s theory is established, he was not the purchaser of the stock or the holder thereof at any time; he did not borrow any money from the Bank of Lafayette with which to pay the price, but merely gave a note as the bank’s trustee for the money actually disbursed by the bank in the purchase of its own stock.
 

 In the Minnesota case, the bank quieted a dissatisfied stockholder at Jenk’s expense, without violating the statute. Here, if defendant’s contention is correct, the bank also accomplished the same purpose by violating the statute, perhaps, at its own expense.
 

 Turning to the defense of want of consideration, we think the plea is well founded. In examining this phase of the case, we shall pretermit any discussion as to the effect of the word “Trustee” appearing after defendant’s signature on the note. That is merely one of the incidents of the transaction. If defendant had signed the instrument individually, and not as 'trustee, the question presented for decision still would be whether parol evidence is admissible to show the absence of consideration, and, if so, whether that defense has been established.
 

 Section 28 of Act No. 64 of 1904 declares that absence or failure of consideration is a matter of. defense as against any person not a holder in due course. And, as we have hereinabove shown, plaintiff cannot be regarded as a holder in due course. Hence it was competent for defendant to show, if he could do so, that the note was without consideration, was given merely as a matter of form, and was not intended to bind him personally.
 

 We find, as did the trial judge, that defendant has established his plea of want of con
 
 *693
 
 sideration. We have hereinabove set forth the circumstances under which defendant executed and delivered the note sued on to the Bank of Lafayette & Trust Company. Under the plan adopted by the bank as a matter of policy, the bank itself became the purchaser of its own stock, using its own funds for the purpose, receiving and retaining the stock as owner. Defendant neither borrowed any money from the bank to pay for the stock nor at any time had possession or control of the stock purchased. He merely acted as the agent of the bank in the transaction, and received no personal benefit therefrom. He executed the note on condition that he was not to be personally bound, and merely as a means for keeping the bank’s books in balance.
 

 It is not necessary to consider the alternative defense.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 St. PAUL, X, absent.